GRINER *v.* ASHDON.

1. COVENANTS—SPECIFIC PERFORMANCE—IMPROVEMENT OF RIGHT OF WAY—EVIDENCE.

In suit for specific performance of grantors' covenant to put 18-foot right of way along section line in condition for use as a passable highway from property conveyed to plaintiffs to the public highway, evidence did not indicate that duty was imposed upon plaintiffs to determine the correct location of the section line.

2. SPECIFIC PERFORMANCE—IMPROVEMENT OF RIGHT OF WAY—FINDING OF COURT—EVIDENCE.

Evidence supported finding that defendant grantors had failed to carry out terms of stipulation that they would provide a passable highway on 18-foot right of way along section line from land conveyed to public highway, hence grantees were entitled to decree of specific performance therefor.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted June 4, 1947. (Docket No. 20, Calendar No. 43,725.) Decided October 13, 1947.

Bill by Earl O. Griner and wife against Merton M. Ashdon and others for specific performance of an agreement contained in a stipulation. Decree for plaintiffs. Defendants appeal. Affirmed.

*Marvin & Neller*, for plaintiffs.

*L. W. Beardsley* (*Cobb & Nielsen*, of counsel), for defendants.

Carr, C. J. This is an appeal from a decree requiring the principal defendants, Merton M. Ashdon and Maud H. Ashdon, his wife, to specifically perform their agreement to put the north 18 feet of the northwest fractional quarter of section 18, Newton township, Calhoun county, Michigan, "in condition for use as a passable highway," from the property now owned by plaintiffs Earl D. Griner and Esther M. Griner, his wife, to the public highway.

For several years the Ashdons had owned a tract of land lying on the shores of Cotton lake in Calhoun county. On October 2, 1941, plaintiffs purchased from these defendants on land contract a portion of this land for the purpose of erecting a home thereon. This contract did not contain a grant of an easement of a right of way to this parcel over the remaining lands of the grantor.

Plaintiffs claim that when they were negotiating with defendants they were told that a road would be built from the highway to their property. When they received their contract and discovered that no provision had been made therein for a right of way they advised the sellers' attorney, who prepared a rider to the contract, which was executed by all the parties and contained the following language:

"It is understood and agreed that the attached contract carries with it an easement from the first parties to second parties of a right of way in and to the property described in the attached land contract, to be used in common with others. Said right of way to be 18 feet in width and extending from the west boundary line of said section 18 and lying adjacent to the north boundary line of said section 18.

"This attached contract is understood to be a contract dated October 2, 1941, running from Merton M. Ashdon and Maud H. Ashdon, husband and wife, to Earl D. Griner and Esther M. Griner, husband

and wife, and conveying land situated in section 18, town 3 south, range 7 west, which said land lies 879 feet east of the northwest corner of said section 18.''

Plaintiffs then built a permanent home on the property, which they began to occupy in the spring of 1942, and as access thereto used a meandering right of way, defendants having thus far failed to make the 18-foot right of way, mentioned in the contract, passable. Discussions concerning access to the property continued until June of 1944, when defendants began a suit against plaintiffs, because of their failure to pay the remainder of the purchase price of the land. This action was discontinued because of a stipulation between the parties, dated October 20, 1944, in which it was provided that plaintiffs were to pay the sum of $341.86, and defendants were to execute and deliver a warranty deed and ''also to provide an easement for the use of a right of way over the property of defendants located in the northwest corner of said section, beginning at approximately 422 feet east of the northwest corner of said section, said right of way running in a meandering line around a pond located in the northwest quarter of said section to a point on the public highway along the west line of said section 200 feet more or less south of the northwest corner of said section, to be used as a highway until the right of way across the north 18 feet of the northwest one quarter of said section has been put in condition by defendants to be used so that it will be passable as a highway.''

The stipulation further provided that defendants ''have at the date hereof let a contract for the improvement of the right of way over the north 18 feet of said section from the property owned by plaintiffs to the highway along the west line of said section, that a contract for said right of way pro-

vides that it shall be completed and put in passable condition as soon as possible."

The deed, which is dated October 25, 1944, contains the following language:

"This grant is subject to an easement for highway and road purposes over the north 18 feet of the above described property, and there is also hereby conveyed an easement for highway and road purposes over the north 18 feet of the northwest fractional quarter of said section 18, extending from the property hereby conveyed to the west line of said section.

"There is also hereby conveyed the right to use for highway and road purposes a right of way over the property of the grantors located in the northwest corner of said section, beginning at approximately 422 feet east of the northwest corner of said section, said right of way running in a meandering line around a pond located in the northwest one quarter of said section to a point on the public highway along the west line of said section 200 feet more or less south of the northwest corner of said section, to be used as a highway and road until the right of way across the north 18 feet of the northwest quarter of said section has been put in condition by the grantors and made passable for highway and road purposes."

About a year later defendants conveyed some of the property, encumbered with the meandering easement, to Lyle E. Ashdon and Laura Mae Ashdon, because of which they were made parties defendant to the bill of specific performance. About this time a fill across the pond at the west end of the right of way was completed, which defendants claim put the 18-foot highway into passable condition, and they fenced off the meandering way which plaintiffs had been using across defendants' property. Thereupon

plaintiffs filed their bill for specific performance and a temporary injunction was issued restraining defendants from interfering with plaintiffs' use of the meandering way until the 18-foot right of way was completed and put in passable condition.

In their answer to plaintiffs' bill, defendants contended that the 18-foot roadway had been completed on or about November 20, 1945, and was in passable condition, and that they were not required to furnish any other right of way. They denied any breach of the covenants in their deed, sought dismissal of plaintiffs' bill, and, by cross bill, asked that plaintiffs be enjoined from further trespassing upon defendants' lands, and that they be required to pay for their use of the meandering way and the damages to defendants' fence.

The trial court said:

"Defendants' attorney contends there is no contract or agreement to be specifically performed. How anyone can read the stipulation entered into by the parties in the former suit and the deed given in compliance therewith and make such a contention is hard for the court to understand. It is specifically agreed between the parties in said instrument that defendants will put the 18-foot right of way along their north line in condition so that it will be passable as a highway. Defendants' attorney contends there is no time specified as to when it shall be done. Then the law would require it to be done in a reasonable time. However, the stipulation says that a contract has been let and it will be completed and put in condition as soon as possible and that plaintiffs should have an easement around the pond until it is completed. Defendants have made a fill across the pond in the northwest corner of the property and while they have done nothing whatever to improve the balance of the 18-foot right of way to plaintiffs' property, they contend the work on the

right of way, to make it a passable highway, is completed, and attempted to stop plaintiffs from using the meandering right of way around the pond, until they were restrained by order of this court.

"It is apparent under the evidence as submitted, that defendants have agreed to put the 18 feet reserved as a right of way along their north line, in condition so that it will be passable as a highway. So the sole question to be determined in this suit is, have they failed to carry out their agreement in that regard, and are plaintiffs entitled to specific performance of this said agreement?

"The evidence shows that the only work the defendants have done on said right of way is to make a fill of some 400 feet across a pond in the northwest corner of the property. This fill was made of stones, sand, clay and some gravel and the fill is not over 10 to 12 feet wide on top at the most, and is not always passable except in dry weather. Due to the condition of said fill, it is not safe to travel in bad weather, and if one gets out of the ruts for a moment, he is liable to run off into the pond. The balance of the right of way is overgrown with trees and juniper brush, and there is nothing but a sort of cowpath of one track meandering through the trees and brush. Testimony shows that this track is not entirely south of the north section line on defendants' property. To travel the single track, it is necessary to travel over the north section line to avoid hitting trees growing in the right of way. The great weight of the evidence shows that there is not at the present time a passable highway over said north 18 feet of said property. The testimony of the two surveyors offered by the plaintiffs and defendants show that the north fence is not on the section line, being about one foot north of the section line at the northwest corner and about seven feet north of the section line at the plaintiffs' property at the east.

"The testimony shows that many persons have had their cars damaged while traversing said right

of way, or rather, the road or path across the said right of way, by stumps and, or, roots of trees, that at certain times of the year it is impossible for tradesmen to travel said roadway to plaintiffs' home due to the muddy, rutty condition of the road and also to the fact that the roots of trees growing in said right of way extend out into the road. Since the fill was made over the pond, many persons, due to the condition of it, have been afraid to travel the same except in dry weather, and then only in first or second gear. Some persons have been stuck and have had to be hauled out with a truck. A thorough review of all of the evidence establishes the fact that defendants Merton M. Ashdon and Maud H. Ashdon have failed to carry out their stipulation and agreement made at the time of the execution of the deed to plaintiffs to put said right of way in condition for use as a passable highway, and that plaintiffs are entitled to have their agreement specifically performed by defendants Merton M. Ashdon and Maud H. Ashdon by putting said 18-foot right of way in condition to be used so that it will be a passable highway.''

Defendants contend on appeal that they did not enter into an agreement to construct a passable highway along the north section line, but they nevertheless did provide one. This, they argue, should terminate the easement of a meandering right of way over their lands. They insist that the 18-foot highway was completed on November 21, 1945, and has been in constant use ever since, with very little or no repair; that in the event it is finally determined that they are required to do more work on this right of way, it should only be after a resurvey and proper determination of the location of the section line.

On our review *de novo,* we do not find any obligation in the instruments of title, or imposed by acts of the parties, that would require plaintiffs to de-

termine the correct location of the section line. They are entitled, under their deed, to a passable highway over the north 18 feet of the fractional quarter section from their property to the west line of the section.

There is ample testimony to support the finding of the trial judge that defendants Merton M. Ashdon and Maud H. Ashdon have failed to carry out the terms of their stipulation and agreement by reason of which plaintiffs paid the balance of their purchase price and accepted a deed to the property. Defendants agreed to provide a passable highway, have not done so, and should be required to specifically perform their obligation. The decree is affirmed, with costs to appellees.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.